**Kasey HOLTON, a minor, By and Through her Guardian ad litem, Barbara HOLTON, Petitioner,**

v.

**SECRETARY OF THE DEP'T OF HEALTH AND HUMAN SERVICES, Respondent.**

No. 89–22V.

United States Claims Court.

June 21, 1991.

Publication Ordered Oct. 25, 1991.

Rodney A. Klein, with whom was Michael Skow, Sacramento, Cal., for petitioner.

David L. Terzian, with whom were Asst. Atty. Gen. Stuart M. Gerson, Helene M. Goldberg, John Lodge Euler and Frank F. Krider, for respondent.

## OPINION AND ORDER

TURNER, Judge.

Petitioner seeks review of the special master's April 12, 1991 decision awarding attorney fees and costs far below those requested and awarding damages for pain and suffering and lost wages which were not requested. (The decision awarded $17,-325 in attorney fees, $5448.78 in costs and $7226.22 for pain, suffering and lost wages.) The special master had earlier recommended that petitioner receive compensation for unreimbursable expenses in the amount of $1,629,633 (net present val-

ue) for injuries sustained as a result of a diptheria-pertussis-tetanus (DPT) vaccine. Neither side has challenged that earlier determination. For the reasons given below, the special master's April 12, 1991 decision should be vacated as arbitrary. Petitioner is entitled to an award of $29,650 in attorney fees and $350 in costs.

I

On September 3, 1981, at the age of seven weeks, petitioner Kasey Holton received her first DPT vaccination. Within 72 hours, she suffered an adverse neurological reaction.

The National Childhood Vaccine Injury Act, 42 U.S.C.A. §§ 300aa–1 to 300aa–33 (West Supp.1991), became law in 1986. The 1987 amendments to the Vaccine Act created a compensation fund for retrospective cases, i.e., cases in which the alleged injury-producing vaccine was administered prior to October 1, 1988.

On March 21, 1989, petitioner instituted an action for compensation under the Vaccine Act. During the course of proceedings, respondent sought a suspension of this case and all other cases under the vaccine compensation program on the ground that it had insufficient resources to perform its duties under the Vaccine Act. This request resulted in a contested hearing before the chief judge of the Claims Court on a matter collateral to the merits of Kasey's petition for compensation. Shortly thereafter, the Department of Justice formally withdrew from representing respondent.

Later, petitioner was forced to seek a suspension of proceedings due to respondent's request for additional medical records and respondent's asserted difficulty in "formulat[ing] its position." Because of the uncertainty surrounding respondent's position and the Department of Jus-

tice's role in this case, petitioner had to delay formulating her own litigation strategy.

Evidentiary hearings on the merits were held before the special master on two occasions. The second hearing was necessitated by deficiencies in the life-care planner's initial report identified by the special master.[1]

On September 20, 1990, the special master recommended an award of $1,629,633 (net present value) for Kasey's future medical treatment, therapy, education and home assistance. Payments were to be made by respondent purchasing an annuity contract for Kasey's benefit. According to petitioner, the total payments over Kasey's lifetime will amount to $8,506,020. Neither petitioner nor respondent challenged the special master's September 20, 1990 decision, and judgment was entered on October 24, 1990. On November 6, 1990, petitioner elected to accept the award. 42 U.S.C.A. § 300aa–21(a).

II

On December 12, 1990, petitioner requested $39,422.50 in attorney fees and $9474.53 in costs in connection with her successful claim for compensation.[2] Under 42 U.S.C.A. § 300aa–15(e)(1), the special master or court "shall ... award as part of [the] compensation an amount to cover— (A) reasonable attorneys' fees, and (B) other costs...." Unlike compensation for future expenses, which the special master can award in the form of an annuity, "[a]ny reasonable attorneys' fees and costs shall be paid in a lump sum." 42 U.S.C.A. § 300aa–15(f)(4). An attorney may not charge a fee for services in a case brought under the Vaccine Act which exceeds the amount awarded as attorney fees by the court or special master. 42 U.S.C.A. § 300aa–15(e)(3). Further, the combined award for attorney fees, costs, pain, suffering and lost wages in retrospective cases is limited to $30,000. 42 U.S.C.A. § 300aa–

---

1. Respondent appeared at the second hearing.

2. Klein's attorney fee request contained a $50 arithmetical error. He requested $25,312.50 for

15(b).[3]

The $39,422.50 in attorney fees claimed by petitioner represented a total of 101.05 hours for attorney Rodney Klein at $250 per hour and 94.4 hours for attorney Michael Skow at $150 per hour. Petitioner accompanied the request for attorney fees with a detailed breakdown of activities performed and time spent on each activity. In a supplemental submission to the special master, petitioner provided substantiation of claimed costs in the form of receipts, bills and account statements.

Klein has over twenty years' experience litigating personal injury actions; Skow, his associate, began practicing law in 1988. Klein submitted letters from several lawyers and a judge from the Sacramento area attesting to Klein's high degree of competence and lending support to petitioner's assertion that Klein's rate was within the prevailing rates in the Sacramento area for attorneys of comparable skill and experience. However, the special master reduced Klein's rate from $250 to $200 per hour, and reduced Skow's rate from $150 to $100 per hour. This reduction was based on "petitioner's support for the requested rates" as well as "the findings of several special masters that hourly rates of $200 and $100 respectively are reasonable." SMD at 2.[4]

From the initiation of proceedings on the petition through June 11, 1989, Klein recorded 22 hours as the sole attorney on the Holton matter. The special master deducted 10.3 hours from this amount, as follows: 1.2 hours for tenth-of-an-hour entries; 8.3 hours for the "administrative task of reviewing and outlining 171 pages of medical records;" and 0.8 hours for "providing the client with updates of the case which did not add materially to the prosecution of the case." SMD at 6.

Beginning on June 12, 1989, Skow began working on the Holton matter along with

Klein. However, according to the special master, "this joint effort was not shown to be necessary or productive." SMD at 2. The special master found that there was a substantial duplication of effort between Klein and Skow, SMD at 2–4, and further found that Klein and Skow had claimed an excessive number of hours. SMD at 4–6. Thus, the special master, in his discretion, reduced the hours claimed by Klein after June 11, 1989 by 50%, and reduced Skow's hours by 25%. SMD at 5–6.

Of the $9474.53 in costs claimed, $5689.62 were for the services of Marcia Hanak, a registered nurse and rehabilitation consultant. Hanak prepared a life care plan for Kasey and testified as to the projected costs of caring for Kasey. The special master reduced Hanak's fee from $125 per hour to $60 per hour due to lack of substantiation for the higher rate, SMD at 6–7, and allowed recovery for one-half of Hanak's claimed travel time, SMD at 7 n. 1. In addition, the special master disallowed all claimed costs associated with Hanak's preparation of a revised life-care plan and supplemental testimony. According to the special master, the deficiencies in the original plan and the need for a second hearing were the fault of petitioner, and thus the costs associated therewith should be borne by petitioner. SMD at 7–8.

Finally, the special master reduced a claimed expense of $1020 for a consultation with a psychologist to $435, on the ground that a proper interpretation of the documentation showed that the doctor had only charged $435. Appendix A to this opinion is a table summarizing the attorney fees and costs claimed by petitioner and allowed by the special master.

Finding that the appropriate award of attorney fees and costs was $7226.22 below the statutory cap of $30,000 for attorney fees, costs, pain, suffering and lost wages in retrospective cases, the special master

---

his own services, but the correct figure is $25,-262.50 (101.05 hrs. × $250 per hr.).

**3.** In section III, *post* at 395, we discuss the interplay among the various provisions relating to attorney fees in detail.

**4.** Citations in the form "SMD at ——" refer to the special master's April 12, 1991 decision.

awarded $7226.22 for pain, suffering and lost wages. SMD at 9 n. 3.

It is significant that petitioner initially requested compensation for pain and suffering in her petition filed March 21, 1989, but abandoned that request in her application for attorney fees and costs. As the special master recognized, "[p]etitioner did not request compensation for pain and suffering and lost wages [in her application for attorney fees and costs] because petitioner's attorney fees request exceeded the $30,000 limitation." SMD at 9 n. 3. Moreover, at no stage of this litigation has petitioner ever requested compensation for lost wages.

### III

In retrospective cases an award of attorney fees and costs is governed by 42 U.S.C.A. § 300aa–15(b), which provides:

> Compensation awarded under the [Vaccine Act] to a petitioner ... for a vaccine-related injury or death associated with the administration of a vaccine before the effective date of this subpart may include the compensation described in paragraphs (1)(A) and (2) of subsection (a) of this section [relating to unreimbursable expenses for care of the petitioner, or in the case of a death associated with a vaccine, a lump sum award] and may also include an amount, not to exceed a combined total of $30,000, for—
>
> (1) lost earnings ...,
> (2) pain and suffering ..., and
> (3) reasonable attorneys' fees and costs (as provided in subsection (e) of this section).

Subsection (e) of 42 U.S.C.A. § 300aa–15, in turn, provides in relevant part:

> Attorneys' fees
> (1) In awarding compensation ... the special master or court shall also award as part of such compensation an amount to cover—
> (A) reasonable attorneys' fees, and
> (B) other costs,

incurred in any proceeding on ... a petition [for compensation for vaccine-related injuries or death]....

....

> (3) No attorney may charge any fee for services in connection with a petition [for compensation for vaccine-related injuries or death] which is in addition to any amount awarded as compensation by the special master or court under paragraph (1).

■ 42 U.S.C.A. § 300aa–15(b) is ambiguous with regard to how an award for pain, suffering, lost wages, attorney fees and costs is to be apportioned if the combined total of such an award would exceed $30,000 absent the statutory cap. For example, if the special master were to determine that without the $30,000 limit, a given petitioner would be entitled to $100,000 for lost wages, $20,000 for pain and suffering, $21,000 for reasonable attorney fees and $4000 for costs, the statute itself would provide no guidance for the special master to decide which category of compensation, if any, should take precedence.[5]

If the language of a statute is ambiguous, a court may look to the legislative history as an interpretive aid. *Martin J. Simko Construction v. United States*, 852 F.2d 540, 542 (Fed.Cir.1988). The House Report on the 1987 amendments to the Vaccine Act states:

> Subsection (e) [of section 4303, P.L. 100–203, 101 Stat. 1330–223, 42 U.S.C.A. § 300aa–15(b),] provides for additional elements of compensation for retrospective cases. The Act allows retrospective cases to recover only for ongoing medical expenses and for attorney fees and costs. The amendments also authorize payments for pain and suffering, but limit the amount of payment that can be made for all compensation except future medical expenses to a total of as much as $30,000, depending upon the demonstrated need and particular circumstances. *The court may allocate the compensa-*

**5.** By contrast, there is no statutory limit on attorney fees and costs awardable in prospective cases.

*tion for these items as it finds appropriate* in each individual case.

House Rep. no. 1900–391(I), 100th Cong., 1st Sess. 697 (1987) (*reprinted in* 1987 United States Code Cong. & Admin.News 2313–1, 2313–371, 2313–372) (emphasis supplied).

In the absence of statutory standards for determining how to allocate an award of $30,000 among the three categories under section 300aa–15(b), and in light of the statement in the House Report on the 1987 amendments to the Vaccine Act that "[t]he court may allocate the compensation for these items as it finds appropriate," we conclude that Congress meant to commit the allocation decision—where such a decision is necessary due to the $30,000 cap—to the discretion of the special master.

## IV

■ Petitioner seeks review of the special master's decision under 42 U.S.C.A. § 300aa–12(e)(2), which provides in relevant part:

Upon the filing of a motion [for review of a special master's decision], the United States Claims Court shall have jurisdiction to undertake a review of the record of the proceedings and may thereafter—

(A) uphold the findings of fact and conclusions of law of the special master and sustain the special master's decision,

(B) set aside any findings of fact or conclusions of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law, or

(C) remand the petition to the special master for further action in accordance with the court's direction.

The special master chose to address whether the proper amount awardable as attorney fees and costs met or exceeded the $30,000 cap before addressing whether an award for pain, suffering and lost wages should have been made. This allocation decision was entirely appropriate. Indeed, it would have been an abuse of discretion for the special master to consider compensation for pain, suffering and lost wages *before* considering an award of attorney fees and costs, because petitioner abandoned her initial request for compensation for pain and suffering and never requested compensation for lost wages. In other words, petitioner asked that attorney fees and costs be given precedence.

■ Even though the special master properly exercised his discretion in his allocation among the three categories under 42 U.S.C.A. § 300aa–15(b), we find that reduction of the requested attorney fees by more than 50% was arbitrary. The statutory standard for evaluating an attorney fee request is whether the fee is "reasonable." 42 U.S.C.A. § 300aa–15(e). The special master found that the claimed hourly rates were unreasonable, and accordingly reduced the claimed rate for Klein by 20% and the claimed rate for Skow by 33%. Petitioner does not challenge this aspect of the special master's decision.

However, this substantial reduction in the claimed rate was not enough, in the special master's judgment, to yield a reasonable attorney fee. Due to what the special master deemed a duplication of effort between Klein and Skow, as well as a supposed excessive number of hours spent on this case, the special master reduced the number of hours claimed by Klein by over 49% and reduced the number of hours claimed by Skow by 25%.

The special master's reduction for duplication of effort and for excessive time spent does not take into account the realities of conducting a law practice. We take judicial notice of the fact that litigation involves, *inter alia*, frequent travel, review of documents, communication with the court, with witnesses, with opposing counsel and with clients, legal research and drafting of pleadings and motions. All of these tasks must be performed under time limits imposed by the Vaccine Act. We further note that it takes more than one client at a time to support a law practice. In light of these considerations, Klein cannot be faulted for deciding to devote the

time of two attorneys to this case; it was reasonable for Klein and Skow to collaborate on the Holton matter in order to assure that the litigation proceeded in a timely fashion.

No fewer than eight attorneys from the Department of Justice have lent their names to papers filed on behalf of respondent in this matter. The names of five attorneys appear on respondent's latest submission, with two attorneys signing the paper. Just as it is reasonable for attorneys at the Department of Justice to collaborate on a single matter, so it is reasonable for an experienced private practitioner to choose to share the various tasks involved in litigation with an associate.

The examples of duplication of effort and excessiveness cited by the special master largely reflect the special master's substitution of his own judgment about how to conduct the litigation for that of petitioner's attorneys. Klein should not be criticized for reviewing "every piece of paper relating to the case;" he would be derelict in his responsibility to his client if he allowed these tasks to be performed by "clerical" workers as the special master suggests. SMD at 4–5. The special master also stated that "petitioner's attorneys include[d] numerous hours for activities which are within the ambit of the life care planner," such as researching benefits available from the state of Nevada. SMD at 5. However, petitioner's attorney would not be performing the job he was retained by his client to do if he relied on the life care planner, who is not a lawyer, for legal advice.

According to the special master, a life care planner's services are "not ... adequate" if such services do not include an evaluation of the benefits available under state law. SMD at 4. Presumably, then, the special master's decision to reduce Hanak's hourly rate from $125 to $60 was influenced by the fact that Hanak, a nurse and rehabilitation specialist, was not competent to provide an opinion on state law. However, even after reducing Hanak's claimed hourly rate, the special master disallowed 8.95 hours of attorney time for research on Nevada law. Presumably someone needed to look into state law. There is no reason why time spent researching state law should be compensable if performed by a life care planner but not compensable if performed by an attorney.

To take another example, the special master disallowed 0.8 hours for "providing the client with updates" on the progress of proceedings since the updates "did not add materially to the prosecution of the case." SMD at 6. However, the relevant inquiry under the Vaccine Act is whether the time claimed was "reasonable," and under that standard we cannot say that the time for client updates should be disallowed. Indeed, an attorney who fails to keep his client apprised of developments in his client's case is acting unreasonably and runs the risk of malpractice liability.

Based on the above examples, *inter alia,* it was arbitrary for the special master to reduce the claimed hourly rates by 20% for Klein and 33% for Skow, and then to reduce Klein's claimed hours by 49% and Skow's claimed hours by 25%. A decision is arbitrary if there is not a rational connection between the factors relied on and the result reached. *Bowman Transportation v. Arkansas–Best Freight System,* 419 U.S. 281, 285, 95 S.Ct. 438, 441, 42 L.Ed.2d 447 (1974). In the absence of glaring evidence of abuse, for the special master to conclude that an experienced attorney who has appeared in many Vaccine Act cases spent almost twice as much time as he should have on this case, in addition to having his associate spend 25% more time than was called for, was arbitrary.

Buttressing our conclusion that the reduction in requested attorney fees was arbitrary is the special master's statement that "it is unreasonable for the Vaccine Act to compensate [the] inefficienc[y]" caused by the supposed duplication of effort between Klein and Skow. SMD at 3. However, simultaneously, the special master reduced the requested attorney fees and costs to $7226.22 less than the effective $30,000 limit, and then awarded $7226.22 in compensation for pain, suffering and lost wages. Since the special master was clear-

ly prepared to award the maximum allowable under 42 U.S.C.A. § 300aa–15(b) in any event,[6] his concern about depletion of the fund should not have come into play. Simply put, the impact on the compensation fund is irrelevant in a retrospective case where the full $30,000 award for pain, suffering, lost wages, attorney fees and costs is contemplated. To the extent that this concern over depletion of the fund colored the special master's decision to reduce the claimed attorney fees by more than 50%, the reduction was arbitrary. Just as a decision which fails to consider all of the relevant factors is arbitrary, *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971), so too is a decision which relies on an irrelevant factor.[7]

Petitioner's attorneys were forced to spend time on collateral matters involving whether and in what capacity respondent would participate in these or in any other proceedings under the Vaccine Act. Furthermore, petitioner's attorneys achieved a highly favorable result for their client. In light of the history of this litigation, the result achieved and the unchallenged reduction in the hourly rates claimed, the special master's reduction in the number of hours claimed was inappropriate.

### V

According to respondent, "[b]ecause vaccine cases are presumably less complicated and more straightforward procedurally as well as substantively, and because the hearing on entitlement was essentially uncontested, the amount and intensity of effort by the petitioner to adduce the necessary evidence sufficient to meet her burden of proof was substantially reduced." We reject unequivocally any suggestion that an attorney for a petitioner under the vaccine program is warranted in putting out anything less than the highest effort. Indeed, petitioner did not retain Klein to cut corners, to conduct a half-hearted inquiry into

the facts of Kasey's case, or to engage in cursory legal research.

Moreover, this case was far from "procedurally straightforward." (The confusion over respondent's role in this case resulted in two suspensions of proceedings.) Finally, an attorney for a petitioner under the vaccine program must prepare his case as if every factual and legal issue will be contested, regardless of how straightforward or uncontested the case may appear with hindsight. Any other approach would not serve the client's interests. For example, in a recent case, respondent took the position that there was no conclusive medical evidence that DPT vaccines cause neurological injury. *Sumrall v. Secretary of the Dep't of Health and Human Services*, 23 Cl.Ct. 1 (1991). Thus, in *Sumrall* the petitioner was forced to demonstrate the validity of the very premise underlying the Vaccine Act, namely, that certain childhood vaccines—including DPT—can and do cause neurological injury. An attorney filing a petition for compensation under the Vaccine Act can take nothing for granted.

■ Both Kasey Holton and the court are justified in expecting diligence and thoroughness from Klein; Klein should not now be penalized for giving the type of representation that his client and the court demand. Over the two-year course of this litigation, which involved two evidentiary hearings and two suspensions of proceedings, and which resulted in a highly favorable result for petitioner, petitioner's attorneys spent a total of 195.45 hours. From our review of the fee application, we conclude that none of the hours claimed appear to be unreasonable. Thus, petitioner is entitled to an award of $29,650 for reasonable attorney fees. *See* Appendix B.

The special master reduced the claimed $9474.53 in costs to $5448.78. We have no occasion to examine this aspect of the special master's decision, because the reasonable attorney fee of $29,650, coupled with the $5448.78 in costs awarded by the spe-

---

**6.** The special master awarded $7226.22 for pain, suffering and lost wages in a conclusory statement in a footnote, with no analysis and without reference to testimony, to Kasey's condition, or to any evidence relating those items.

**7.** By contrast, the impact on the fund would be a relevant factor in considering a request for attorney fees in a prospective case, where there is no statutory limit on attorney fees.

cial master, exceeds the $30,000 cap for compensation for pain, suffering, lost wages, attorney fees and costs in retrospective cases.[8]

### VI

The special master's April 12, 1991 decision is VACATED. Pursuant to 42 U.S.C.A. §§ 300aa–15(b)(3) & 300aa–15(e)(1)(A), petitioner is entitled to compensation in the amount of $30,000, allocated as follows: $29,650 for reasonable attorney fees and $350 for costs. Judgment shall be entered accordingly.

### APPENDIX A

|  | CLAIMED | ALLOWED BY SPECIAL MASTER |
|---|---|---|
| **ATTORNEY FEES:** |  |  |
| Klein | 101.05 hrs. × $250 per hr. ——— $25,262.50 | 51.275 hrs. × $200 per hr. ——— $10,255.00 |
| Skow | 94.4 hrs. × $150 per hr. ——— $14,160.00 | 70.7 hrs. × $100 per hr. ——— $7070.00 |
| **TOTAL ATTORNEY FEES:** | **$39,422.50** | **$17,325.00** |
| **COSTS:** |  |  |
| Life care planner |  |  |
| –1st plan * | 32.8 hrs. × $125 per hr. ——— $4100.00 + $ 370.87 costs ——— $4470.87 | 31.3 hrs. × $60 per hr. ——— $1878.00 + $ 370.87 costs ——— $2248.87 |
| –Revised plan ** | $1218.75 | $ 0 |
| Consultation w/ psychologist | $1020.00 | $ 435.00 |
| Other costs | $2764.91 | $2764.91 |
| **TOTAL COSTS:** | **$9474.53** | **$5448.78** |

\* This entry represents the time spent by the life care planner in preparing the initial life-care plan, as well as travel time, testimony at the first hearing and associated costs. We have extrapolated the entry for number of hours claimed based on the special master's discussion of the amount sought and the hourly rate claimed.

\*\* We cannot determine from the record how much of the $1218.75 associated with the revised life care plan and the second hearing represents a fee for Hanak's services and how much represents Hanak's related costs.

8. We also have no occasion to decide, in light of the fact that the $30,000 limit has been reached, whether petitioner should recover attorney fees in connection with the fee application, or whether petitioner should be permitted to supplement the record to include additional documentation related to the claimed charge of $1020 for the psychologist's consultation.

## APPENDIX B

|  | CLAIMED | ALLOWED BY THE COURT |
|---|---|---|
| **ATTORNEY FEES** | | |
| Klein | 101.05 hrs.<br>× $250 per hr.<br>$25,262.50 | 101.05 hrs.<br>× $200 per hr.<br>$20,210.00 |
| Skow | 94.4 hrs.<br>× $150 per hr.<br>$14,160.00 | 94.4 hrs.<br>× $100 per hr.<br>$ 9440.00 |
| **COSTS** | $ 9474.53 | $ 350.00 |
| **TOTAL** | $48,897.03 | $30,000.00 |