Carl J. PERREIRA and Christina J. Perreira, Parents and Next Friends of Carly C. Perreira, Petitioners,

v.

SECRETARY OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.

No. 90–847V.

United States Court of Federal Claims.

Oct. 30, 1992.

Jack Gage, Cheyenne, Wyo., for petitioners.

Richard C. Mahler, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for respondent.

## ORDER

HARKINS, Senior Judge.

Petitioners, the parents of Carly C. Perreira, seek review in the United States Claims Court under the National Vaccine Injury Compensation Program (the Program), of a special master's decision that partially denied petitioners' application for attorneys' fees and costs.[1]

In prior proceedings, the special master, in a bench ruling on May 2, 1991, had denied petitioners' claim for compensation because of a failure to prove by a preponderance of the evidence an off-Table significant aggravation case. Carly had her first seizure on May 25, 1982, after her second DTP[2] inoculation on May 5, 1982. She also had seizures on June 23 and June 24, 1982. Carly received a third DTP inoculation on July 21, 1982, and experienced seizures approximately two weeks later on August 3, 1982. Petitioners alleged that Carly's seizure condition was significantly aggravated by the third DTP shot.

---

**1.** The Program was established in 1986 as part of the National Childhood Vaccine Injury Act, Pub.L. No. 99–660, tit. III, § 311(a), 100 Stat. 3758. Amendments in 1987, 1988, 1989, 1990, and 1991 substantially changed procedures applicable to the functions of special masters, and review of decisions of special masters. Provisions governing the Program, as amended, are contained in 42 U.S.C.A. §§ 300aa–10 through 300aa–34 (West 1991 & Supp.1992). For conve-nience, further reference to the Program in this order will be to the relevant subsection of "42 U.S.C.A. § 300aa––."

**2.** The Vaccine Injury Table in Section 14 identifies the diphtheria-tetanus-pertussis vaccine combination as DTP. In Program papers, the combination frequently is abbreviated as DPT.

The special master's written decision on the bench ruling was issued on June 13, 1991. In the absence of a challenge to the denial on the merits of compensation, judgment pursuant to the bench ruling was entered on July 17, 1991. Petitioners' motion for review concerns only the partial denial of a claim for attorneys' fees and costs.

Petitioners' claim for attorneys' fees and costs, as submitted to the special master, was for a total amount of $15,995.44, of which $6,981.28 was for expert witness charges. Petitioners' expert had been paid $2,000 for reviewing the case and for a written opinion, which had been submitted to petitioners' counsel on March 8, 1991. The expert demanded an additional $4,440 to appear and testify, payable up front prior to the evidentiary hearing on May 2, 1991. This amount also was paid.

The special master determined that petitioners' counsel should have recognized that the expert's unsupported medical theory was legally insufficient to establish causation in-fact, and that there was no reasonable basis for continuing the case after counsel had reassessed the expert's report prior to the hearing. The special master allowed attorneys' fees and costs incurred up to the hearing date. Petitioners were awarded $6,200.43 for the period during which the petition had a reasonable basis.

A special master has discretion to award attorney fees and costs in a case where a petitioner is denied compensation. Section 15(e)(1) provides:

(1) In awarding compensation on a petition filed under section 300aa–11 of this title the special master or court shall also award as part of such compensation an amount to cover—

(A) reasonable attorneys' fees, and

(B) other costs,

incurred in any proceeding on such petition. If the judgment of the United States Claims Court on such a petition does not award compensation, the special master or court may award an amount of compensation to cover petitioner's reasonable attorneys' fees and other costs incurred in any proceeding on such petition if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought.

The statute does not require, and does not give petitioners a right to, an award of attorneys' fees and costs in every case where compensation is denied. The discretion to award attorneys' fees and costs can be exercised only in cases where it can be determined that the petitioner brought the case in good faith, and that the basis for the claim was reasonable.

Petitioners' challenge to the special master's decision on attorneys' fees and costs fails to recognize the Program is unique in the Judicial Branch and that it operates under special procedures. *See Munn v. Secretary of Dep't of Health & Human Servs.*, 970 F.2d 863, 868–69 (Fed.Cir.1992). The 1989 Amendments established a separate Office of Special Masters within the Claims Court, administered by a chief special master, and gave that office exceptional authority with considerable administrative independence in decisions on claims for compensation under the Program. Section 12(c). The 1989 Amendments directed promulgation of separate rules for special masters, and established specific criteria the rules were to contain. Section 12(d)(2). Standards were established for conduct of proceedings on a petition. Section 12(d)(3)(B). Review of a special master's decision by the Claims Court is expected to be an exceptional occurrence rather than a routine procedure.

A special master's decision may not be disturbed by the Claims Court unless the court finds it to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. The 1989 Amendments defined the Claims Court function in a review of a special master's decision in Section 12(e)(2), as follows:

(2) Upon the filing of a motion under paragraph (1) with respect to a petition, the United States Claims Court shall have jurisdiction to undertake a review of the record of the proceedings and may thereafter—

(A) uphold the findings of fact and conclusions of law of the special master and sustain the special master's decision,

(B) set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law, or

(C) remand the petition to the special master for further action in accordance with the court's direction.

Section 12(e)(2)(B) is a highly deferential standard of review. "If the special master has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate." *Hines v. Secretary of Dep't of Health & Human Servs.*, 940 F.2d 1518, 1528 (Fed.Cir.1991).

■ This limited scope of review is tailored to the concepts and objectives of the Program. The standard "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law" is based on one of the criteria established by the Administrative Procedure Act (APA). 5 U.S.C. § 706 (1988). To the extent consistent with Program objectives to be attained through the Office of Special Masters, decisions interpreting the APA standard have application in a review of a special master's decision. Under the APA standard, conclusions of law are considered de novo. *Rice v. Wilcox*, 630 F.2d 586, 589 (8th Cir.1980). On issues of law, recognition should be given to the special master's expertise in the development of the procedures in this novel Program. A decision on issues of law applicable to the Program should be overturned only when error is unmistakably clear.

■ Rationality is the touchstone of the arbitrary, capricious, abuse of discretion or otherwise not in accordance with law standard of review. Fact findings are reviewed under the arbitrary and capricious standard. Legal questions are reviewed under the "not in accordance with law" standard,

and discretionary rulings are reviewed under the abuse of discretion standard. *See Munn v. Secretary of Dep't of Health & Human Servs.*, 970 F.2d at 870, n. 10; *Hyundai Electronics Industries v. United States Int'l Trade Comm'n*, 899 F.2d 1204, 1209 (Fed.Cir.1990).

The Vaccine Rules, RUSCC Appendix J, implement the special procedures established in the statute. There is no discovery as a matter of right; informal and cooperative exchange of information is the ordinary and preferred practice. RUSCC Appendix J, Rule 7. The special master determines the format for taking evidence and hearing argument. In receiving evidence, the special master is not bound by common law or statutory rules of evidence. Consideration of all evidence is governed by principles of fundamental fairness to both parties. Argument may be received by telephone conference call, at a hearing, or in written submissions as determined by the special master. A case may be decided on the basis of written filings, without an evidentiary hearing. RUSCC Appendix J, Rule 8. Proceedings relative to attorneys' fees and costs are separate and follow entry of judgment on the merits of the claim for compensation. RUSCC Appendix J, Rules 13 and 34.

Petitioners' motion for review of the special master's decision is a general broadside. The argument ranges from concepts of adversarial advocacy applicable to practice in English courts in the 19th century, to a perceived necessity to provide the degree of compensation that would make it possible for counsel to remain available to practice in the Program consistent with ethical obligations, and to assure that petitioners would be able to attract competent counsel and experts.

Petitioners' general disclosure into legal policy applicable to the Program does not focus on the conclusions and facts contested, and the arguments overlap. In the circumstances, it is necessary to keep in perspective the actual ruling of the special master, and the real issue that is before the court for decision: Was the special master's denial of part of the attorneys' fees

and costs that were requested, arbitrary, capricious, an abuse of discretion, or otherwise not in accord with law?

■ Although the petitioners had no entitlement to Program compensation, the special master in the exercise of discretion determined that, when the petition was filed, it was brought in good faith and at that time there was a reasonable basis for a claim. As a result, the special master made an award for attorneys' fees and costs in the amount of $6,200.43. The special master denied the balance of the $15,-995.44 that petitioners had requested because the reasonable basis for the claim no longer existed after the specific point in time petitioners' counsel knew, or should have known, their expert's unsupported medical theory was legally insufficient to establish causation in-fact. The special master's decision provides sufficient rationale and findings for the holding that $6,200.43 was a reasonable amount for attorneys' fees and costs. *See Wasson v. Secretary of Dep't of Health and Human Servs.,* 24 Cl.Ct. 482 (1991).

The special master allowed fees and costs up to the point of the evidentiary hearing. Fees and costs after that date were denied because counsel had failed to reassess the case after the expert submitted his report. The special master found that the Program obligates counsel to investigate the facts and make sure that there is reputable medical support for an expert's opinion. Counsel failed to meet this burden.

The expert presented a theory of vaccine manufacturing processes which could produce a product that allegedly resulted in significant aggravation of a preexisting condition 14 days after the vaccination. No segment of the medical community accepted the expert's proposed theory of causation; there was no reputable support in medical literature for the theory.

The special master rejected as patently unreasonable petitioners' contention that counsel had an absolute right to rely on the expert's opinion in pursuing the case. The special master noted that, although a lawyer is not supposed to question the doctor's opinion that a seizure had occurred, the lawyer must question whether the information the doctor relied upon for the opinion has a rational basis. This standard is singularly appropriate in the informal proceedings of the Program.

■ Petitioners argue that neither the statute nor the legislative history requires an opinion of a medical expert to have independent reputable medical support, and that, since the special master's standard requires more than the statute, the standard is contrary to law.

The general rule for determination of eligibility for compensation is provided in Section 13(a). Compensation is to be awarded if the special master or court finds on the record as a whole that the petitioner has demonstrated by a preponderance of the evidence an injury or significant aggravation of a preexisting condition after a vaccine is administered, and that there is not a preponderance of the evidence that the injury, or aggravation is due to factors unrelated to the administration of the vaccine. For their contention that additional medical support for the expert's opinion is contrary to statutory requirements, petitioners rely upon the following limitation in Section 13(a):

> The special master or court may not make such a finding based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion.

The limitation permits an award if the petitioners' claims have independent substantiation from medical records *or* by medical opinion. The limitation does not define the type or quality of either medical records or medical opinion that may be adequate to substantiate petitioners' claims.

Petitioners' construction of Section 13(a) would render the special master powerless to deny attorneys' fees and costs whenever a petitioner is able to secure any expert willing to espouse any theory of causation, even when there is no support in contemporaneous medical records, and there is no reputable medical opinion or literature that

**34**

supports the expert's testimony. Such a result is unreasonable.

Further, petitioners' analysis does not give effect to the statutory provisions that permit the special master to weigh the merits of expert data and testimony. Section 13(b)(1) requires the special master to consider all relevant medical and scientific evidence contained in the record regarding the nature, causation, and aggravation of petitioners' illness. Section 13(b)(1), however, provides "Any such diagnosis, conclusion, test result, or summary shall not be binding on the special master or the court." Expert opinion and testimony in the record is not per se binding on the special master.

A trier of fact is not bound to accept expert opinion, even if it is uncontradicted. *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1325 (Fed.Cir. 1987). The judgments of an expert can be no better than the soundness of the reasons that stand in support of them. *Fehrs v. United States*, 223 Ct.Cl. 488, 620 F.2d 255, 265 (1980). Uncontradicted opinion testimony is not conclusive if it is intrinsically nonpersuasive. *Sternberger v. United States*, 185 Ct.Cl. 528, 401 F.2d 1012, 1016–17 (1968).

The special master's inquiry into the basis of the expert's opinion does not violate the intent of Congress or the statutory provisions of the Act. A medical opinion must be based upon reputable medical evidence to have persuasive effect. No reputable support existed for the expert's theory of causation in this case. The special master was correct in concluding that the expert's testimony was insufficient to establish causation in-fact.

Petitioners contend that the denial of part of the requested attorneys' fees and costs was arbitrary, capricious, and an abuse of discretion. In large part, this portion of the motion for review consists of a personal attack on the credibility and reputation of the special master. These ad hominum attacks have no support in the record. Other cases by the special master, cited by petitioners, do not support the contention that Program processes are being manipulated or that there is a disqualifying bias against experts.

Petitioners complain that the effect of the denial of attorneys' fees and costs in the circumstances of this case is that "expert and counsel will be less willing to take on the time-consuming and thankless task of participating in the Program." What petitioners overlook is the simple fact that continuing this case with no support in the contemporaneous medical records, and with no medical testimony supported by reputable medical opinion or scientific studies, was unreasonable.

■ Petitioners' assertion that the court has the responsibility to compensate counsel, without reservation, for attorneys' fees and costs in order to attract competent counsel and expert participation disregards the requirement in Section 15(e) that such expenses are to be "reasonable." The conjunction "and" conjoins both "attorneys' fees" and "other costs" and the word "reasonable" necessarily modifies both. Not only must any request for reimbursement of attorneys' fees be reasonable, so also must any request for reimbursement of costs.

The special master is afforded wide discretion in determining the reasonableness of costs, as well as attorneys' fees. The mere fact that petitioners' agreed to pay $6,600 plus expenses to their medical expert does not make such cost reasonable. Nor does the fact that petitioners chose to proceed with a case knowing that there was no medical or scientific evidence or opinion supporting their case make all of the attorneys' fees reasonable. Petitioners are not given a blank check to incur expenses without regard to the merits of their claim. Nor does this court have a responsibility to compensate counsel in vaccine cases after there no longer is a reasonable basis for their claim.

■ Petitioners contend that the doctrine underlying the denial of part of the attorneys' fees and costs in this case improperly constrains counsel in the ethical discharge of the attorney's duty to the client. In essence, this contention is rooted in admonitions that upon acceptance of rep-

resentation, counsel must "zealously and tirelessly" advocate the client's cause.

Petitioners support this argument by reference to Canon 7 of the Code of Responsibility, adopted by the ABA on February 24, 1970, and Rule 3.1 of the Model Rules of Professional Conduct, adopted by the ABA on August 2, 1983. Petitioners' argument utilizes these authorities interchangeably, with passages selected to support petitioners' view of advocacy responsibilities in adversary proceedings. Little attention is paid to historical developments in legal practice that is reflected in these authorities. Petitioners devote particular attention to Ethical Consideration 7–19 of the 1970 Code as support for the contention that the special master "has determined to thwart the good faith efforts of counsel to zealously present difficult cases and to develop appealable records."[3]

Petitioners' discourse of ethical consideration does not take into consideration the distinction between concepts applicable to traditional adversary proceedings in court and the modified proceedings authorized in the Program for determinations applicable to compensation for vaccine injuries and for award of attorneys' fees and costs. Petitioners' argument would incorporate advocacy concepts that were specifically omitted from Program procedures. Such concepts would result in delays and obfuscations that the Program was designed to avoid.

In addition, petitioners' discourse on ethical obligations of counsel to their clients overlooks counsel's duty to the court. While an attorney has an ethical obligation to be a zealous advocate for the client's cause, this does not mean that an attorney has license to proceed with a frivolous case on behalf of the client. Rule 3.1 of the ABA Model Rules of Professional Conduct provides that "[a] lawyer shall not bring or

defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law." Comment 2 provides an action is deemed frivolous "if the lawyer is unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for an extension, modification or reversal of existing law." This standard is similar to RUSCC 11 ("signature of an attorney ... constitutes a certificate by the attorney ... that to the best of the attorney's knowledge, information and belief formed after reasonable inquiry it is well grounded in fact ... and that it is not interposed for any improper purpose such as ... needless increase in the cost of litigation.")

On the record of this case, petitioners are unable to show that the special master's findings of fact or conclusion of law in the decision on attorneys' fees and costs is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Accordingly, the findings of fact and conclusion of law of the special master are upheld and the special master's decision is sustained. The Clerk is directed to enter judgment in accordance with the decision of the special master.

---

3. EC 7–19 provides:
  Our legal system provides for the adjudication of disputes governed by the rules of substantive, evidentiary, and procedural law. An adversary presentation counters the natural human tendency to judge too swiftly in terms of the familiar that which is not yet fully known, the advocate, by his zealous preparation and presentation of facts and law, enables the tribunal to come to the hearing with an open and neutral mind and to render impartial judgments. The duty of a lawyer to his client and his duty to the legal system are the same: to represent his client zealously within the bounds of the law.
  Correlation Table B in the 1983 Model Rules shows "None" for EC 7–19.