**Radona ESTRADA, Parent and Next Friend of Kenneth M. Anderson, Jr., Petitioner,**

v.

**SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.**

No. 90–805V.

United States Court of Federal Claims.

Aug. 12, 1993.

Jack Gage, Cheyenne, WY, for petitioner.

David L. Terzian, Torts Branch, with whom was Asst. Atty. Gen. Stuart E. Schiffer, Helene M. Goldberg, Director, John Lodge Euler, Deputy Director, and Charles Gross, Asst. Director, Washington, DC, for respondent.

## OPINION

ROBINSON, Judge.

On February 17, 1993, Special Master Elizabeth E. Wright ordered that petitioner receive $23,505.56 in attorneys' fees and costs. *Estrada ex rel. Anderson v. Secretary of HHS*, No. 90–805V (Fed.Cl. Spec.Mstr. filed February 17, 1993). This matter is before the court on petitioner's motion for review of Special Master Wright's attorneys' fees decision. For the reasons given below, Special Master Wright's decision is affirmed.

### Factual Background

On August 20, 1990, petitioner filed a request for compensation under the National Childhood Vaccine Injury Act, (the "Vaccine Act" or the "Act") 42 U.S.C. §§ 300aa–1 to –34 (1988), *amended by* several public laws (codified as amended at 42 U.S.C.A.

§§ 300aa–1 to –34 (West Supp.1993)),[1] as legal representative of her son Kenneth M. Anderson, Jr. Respondent conceded that petitioner is entitled to compensation. On April 2, 1991, Special Master Wright held an evidentiary hearing on the issue of damages. At the hearing, petitioner offered the testimony of an expert economist who opined that the Program should compensate petitioner with a complete lump sum payment rather than an annuity. As well, petitioner's expert life care planner detailed petitioner's request for compensation. On December 31, 1991, 1991 WL 290679, the special master awarded petitioner compensation in the form of a lump sum payment plus an annuity.

Petitioner now seeks reimbursement of $28,138.73 for attorneys' fees and costs. Special Master Wright allowed $23,505.56 as reasonable attorneys' fees and costs. The special master pared 17.05 hours of attorney time from petitioner's requested amount and 23.30 hours from the time requested for petitioner's economist. The special master also denied a rate differential between trial time and office time for petitioner's life planner and petitioner's economist; she permitted a $100 per hour rate for the life planner and a $95 per hour rate for the economist.

### A. Reduction in attorney time.

Special Master Wright denied petitioner 17.05 hours of attorney time as unreasonable. The special master found that 9.2 of the 14.2 hours claimed for petitioner's preparation of attorneys' fees application and corresponding reply to respondent's opposition to be "excessive beyond the bounds of reason." *Estrada ex rel. Anderson*, slip op. at 2. The special master observed that other special masters have allowed only one hour of attorney time for preparation of the fee application. *Id.* (citations omitted). Special Master Wright concluded that five hours of attorney time is "more than generous" for preparation and defense of the fee application. *Id.*

---

1. Individual sections of the Act will be cited herein without reference to 42 U.S.C.A. § 300aa.

Special Master Wright denied another 2.85 hours of attorney time, for reviewing her February 17, 1993 order for compensation and conferring with the client, as "excessive;" petitioner claimed 5.7 hours for the task. *Id.* The special master pointed out that the 5.7 hours was spent by two attorneys, one billing 4.0 hours and the other billing 1.7 hours, "doing essentially the same thing." *Id.* Special Master Wright disallowed half of each attorney's time.

Petitioner also requested 10.0 hours of attorney time for conferences and communications between petitioner's economist and petitioner's counsel. *Id.* The special master determined the total time billed by the economist to be "excessive" and, on that basis, disallowed 5.0 hours of claimed attorney time. *Id.* at 2–3.

### B. Reduction of the economist's time.

Petitioner sought reimbursement for 55.30 hours of work by petitioner's economist, including 30.5 hours for "research, analysis, and preparation" and 13.0 hours for case analysis and preparation for testimony. *Id.* at 4. The special master determined that the economist's billing for 55.30 hours "is unreasonable as his participation in this case was minimal." *Id.* Special Master Wright allowed 32.0 hours for the economist, 15.25 hours for research and analysis, and 16.75 hours for case analysis, testimony preparation, travel and testimony. *Id.*

### C. Disallowance of a rate differential for petitioner's experts.

Petitioner also sought an allowance of $125 an hour for petitioner's life care planner's time testifying versus $100 an hour for the life care planner's office time. The special master allowed a $100 per hour rate for time testifying and office time, because petitioner failed to provide a reason for the rate differential. Similarly, Special Master Wright allowed a $95 per hour rate for petitioner's economist for both time spent testifying as well as office time.

### Contentions of the Parties

Petitioner objects to the special master's decision on three grounds: that the decision is arbitrary and capricious because the special master failed to articulate a rationale for reducing petitioner's requested fees and costs; that the special master's reduction in fees was based primarily on disagreement with the litigation strategy of petitioner's attorneys; and, finally, that the special master's decision fails to recognize the realities of private practice.

Respondent urges the court to affirm Special Master Wright's decision, arguing that the decision is clear and allows petitioner the reasonable attorneys' fees and costs mandated by § 15(e) of the Act.

### Standard of Review

■ The Vaccine Act grants the Court of Federal Claims jurisdiction to review the decision of a special master. Recent amendments to the act have limited the court's reviewing authority by "preclud[ing] de novo review in the [Court of Federal Claims] of a decision of a special master." *Hale v. Secretary of HHS*, 22 Cl.Ct. 403, 405 (1991).

■ Under the Amended Act, the court may either uphold, remand, or set aside the findings of fact or conclusions of law of a special master. Section 12(e)(2). However, the court may upset such findings and conclusions only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Section 12(e)(2)(B).

In *Hines ex rel. Sevier v. Secretary of HHS*,` 940 F.2d 1518 (Fed.Cir.1991), the United States Court of Appeals for the Federal Circuit discussed the arbitrary and capricious standard at length, but declined to adopt an exact formulation of the standard for vaccine cases. *Id.* at 1528. It remarked, however, that regardless of the precise definition, " 'arbitrary and capricious' is a highly deferential standard of review." *Id.* The court explained that "[i]f the special master has considered the relevant evidence of record, drawn plausible inferences and articulated a rational

basis for the decision, reversible error will be extremely difficult to demonstrate." *Id.*

### I. Special Master Wright's decision is clear and well-reasoned.

Petitioner contends that the special master's decision fails to provide sufficient analysis for this court to determine whether the special master abused her discretion. Respondent counters that Special Master Wright's decision is clear and, in view of the history of the case, correct.

█ In reviewing a special master's decision on attorneys' fees and costs, the court allows the special master "reasonably broad discretion" in calculating the awards. *Wasson v. Secretary of HHS*, 24 Cl.Ct. 482, 483 (1991); *see Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). It is important, however, that the special master explain her reasons for the fee award. *Id.* The court finds Special Master Wright's decision to be well-reasoned and easily understandable.

█ The special master denied 9.2 hours of attorney time requested for preparation and defense of petitioner's attorneys' fees application because she found 14.2 hours to be unreasonable. Special Master Wright decided that allowing 5 hours was generous since special masters in other cases had allowed only 1 hour of attorney time for this task. The special master has the discretion to disallow claimed hours which are · excessive. *See Hensley v. Eckerhart*, 461 U.S. at 434, 103 S.Ct. at 1939–40.

Special Master Wright denied 2.85 hours of attorney time for reviewing her February 17, 1993 order and conferring with the client because she found the 5.7 spent by two attorneys to be redundant. The special master has the discretion to disallow hours claimed for duplicative work. *See id.*

The special master disallowed 5.0 hours of attorney time for conferring with petitioner's economist, as well as 23.3 hours in costs for the economist's time. Special Master Wright reduced petitioner's claims because she determined the economist's role in the case was minimal. The special master observed that petitioner requested attorneys' fees for 127.10 hours and that was found to be excessive; therefore, Special Master Wright reasoned that for the economist to claim 55.30 was likewise excessive for his minimal role. The special master has the discretion to disallow costs which are unreasonable. *Perreira v. Secretary of HHS*, 27 Fed.Cl. 29, 34 (1992).

Similarly, Special Master Wright had the discretion to disallow cost requests for petitioner's economist and life planner for a rate differential between time testifying and these experts' remaining time. The special master noted that petitioner failed to establish why these professionals would be entitled to a higher fee while testifying. Petitioner's mere agreement to pay the higher fee fails to make the fee reasonable. *Id.*

### II. Special Master Wright's decision provides petitioner with reasonable attorneys' fees and costs.

Petitioner also contends that the special master's decision was based on her disapproval of petitioner's litigation strategy and that the special master's decision fails to recognize the realities of private practice. In support of these contentions, petitioner cites various ethical principles from the ABA Code of Professional Responsibility (CPR or Code) and the ABA Rules of Professional Conduct (RPC or Rules). Petitioner also relies on this court's decision in *Holton v. Secretary of HHS*, 24 Cl.Ct. 391 (1991).

█ In particular, petitioner argues that the special master interfered with her attorneys' obligation to provide zealous representation. This obligation is embodied in Canon 7 of the Code and in the spirit of Rule 3.1 of the RPC. In *Perreira v. Secretary of HHS*, this court ruled that these ethical principles fail to justify a reversal of a reduction in attorneys' fees.[2] *Per-*

---

2. Curiously, despite petitioner's counsel's con-

cern for strict observance of ethical principles,

*reira,* 27 Fed.Cl. at 35. The reasoning of that decision is persuasive. Petitioner advances no argument to warrant a result contrary to *Perreira.* Therefore, the court finds that Canon 7 of the Code and Rule 3.1 of the RPC are an insufficient basis for the court to reverse the special master.

■ Petitioner also cites Rule 5.4(c) of the RPC and disciplinary regulation 5–108 as requiring that her counsel not permit a third-party payor of fees to direct or regulate his professional judgment. *Petitioner's Motion for Review of Special Master's Attorneys' Fees Decision,* filed March 19, 1993 at 6. As well, petitioner observes that Rule 1.8 of the RPC forbids her attorney from acquiring a pecuniary interest adverse to her, unless the transaction and terms are fair and reasonable to the client, and adequately disclosed. *Id.* at 7. The rule also requires the client's consent. *Id.* Petitioner contends that the Vaccine Program imposes a situation upon her where she and her counsel are competing for the same money since she can receive up to $30,000 for her child's pain and suffering if the special master or the court does not award attorneys' fees. *See* § 15(b). As well, petitioner's counsel may not charge petitioner for an amount beyond that awarded by the special master or the court. Section 15(e)(3).

Although the ethical rules advanced by petitioner do not present a valid basis for reversing the special master, the charges made by petitioner are serious. If petitioner, after reviewing this court's opinion, is convinced that counsel violated these ethical provisions by allowing counsel's personal pecuniary concerns to affect petitioner's litigation strategy, or by failing to explain the attorney fee structure contemplated by the Vaccine Program, petitioner should contact the appropriate state bar.

Finally, petitioner argues that the special master's decision was unrealistic based on the record. Petitioner relies on *Holton v.*

*Secretary of HHS* for the proposition that the special master's decision fails to recognize the realities of private practice. However, a careful reading of *Holton* reveals that the court determined the special master's decision in that case was arbitrary and the fees requested by the petitioner were reasonable. *Holton,* 24 Cl.Ct. at 397. Thus, *Holton* is based upon the same standard of review applied in this case. The facts of this case compel the court to affirm Special Master Wright.

The court finds that petitioner's arguments fail to support a conclusion that the special master's decision was an abuse of discretion. Special Master Wright determined reasonable attorneys' fees and costs and articulated her rationale for so finding.

### CONCLUSION

The court understands the factual and analytical bases of the special master's decision. Petitioner is unable to demonstrate that the special master's decision is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Accordingly, the special master's decision is sustained. The Clerk is directed to enter judgment in accordance with the decision of the special master.

---

counsel neglected to mention the court's prior decision in *Perreira* in its motion for review. Counsel is no doubt familiar with the decision in *Perreira. See Perreira,* 27 Fed.Cl. at 30 ("Jack Gage, Cheyenne, Wyo., for petitioners"). In that decision, counsel was reminded of his obli-

gation to the court. *Perreira,* 27 Fed.Cl. at 30. The court now cautions counsel that included in an attorney's obligation is the duty of candor toward the. tribunal defined in Rule 3.3(a) of the RPC.