Betty W. WILLIS, Petitioner,

v.

UNITED STATES POSTAL SERVICE, Respondent.

No. 00–3126.

United States Court of Appeals, Federal Circuit.

DECIDED: April 3, 2001.

John P. Gamlin, John P. DiFalco & Associates, P.C., of Fort Collins, CO, argued for petitioner.

Kent G. Huntington, Trial Attorney, Department of Justice, of Washington, DC, argued for respondent. With him on the brief were David M. Cohen, Director; and James M. Kinsella, Deputy Director. Of counsel on the brief were R. Andrew German, Managing Counsel; and Brian M. Reimer, Attorney, Legal Policy, United States Postal Service.

Before NEWMAN, MICHEL, and GAJARSA, Circuit Judges.

MICHEL, Circuit Judge.

This appeal concerns the award of attorney fees at an hourly rate significantly lower than the rates billed by the attorneys representing a successful appellant before the Merit Systems Protection Board ("Board"). We address whether an applicant for a fee award submitted evidence sufficient to establish, prima facie, that the billing rates at which the recovery of attorney fees is sought were "reasonable," as required by the applicable fee recovery statute. 5 U.S.C. § 7701(g)(1) (1994). Reversing the Board, we hold that the evidence submitted by petitioner Betty W. Willis was sufficient, namely: (1) her representation contract specifying the rates sought; (2) affidavits from both of her non-local attorneys stating that they contracted with and billed her at their customary rates, and that these rates were "average" for Charleston, West Virginia—the community where the hearing was scheduled; and, (3) three previous decisions by the Board holding that these rates, charged by the same firm that had represented Willis, were reasonable in similar appeals in three other communities. The Board apparently either overlooked or completely discounted this evidence, stating that Willis "adduced no relevant evidence to support her attorneys' requested hourly rates." *Willis v. United States Postal Serv.*, slip op. at 7, No. PH–0752–97–0381–A–1 (Initial Decision, Mar. 19, 1998) ("*Willis*"). Because the Board's requirement that Willis submit additional evidence was based upon Board case law that, even assuming its correctness, is inapplicable to this case, we reverse its decision and remand for an award of fees at the contract rates.

## BACKGROUND

Willis was employed as a Postmaster by the United States Postal Service ("government") in Big Sandy, West Virginia. The government removed Willis from federal service based upon its conclusion that she had filed a fraudulent claim for workers' compensation. For reasons not appearing in the record, Willis chose to retain non-local counsel—the law firm of John P. DiFalco & Associates, located in Fort Collins, Colorado. On July 10, 1997, she appealed her removal. The Board scheduled a hearing in Charleston, West Virginia, approximately 100 miles from Big Sandy. On October 22, 1997, prior to the hearing date, Willis and the government entered into a settlement agreement under which

the government rescinded her removal, restored her benefits, and expunged her record of all references to the removal. On December 2, 1997, Willis filed a motion to recover attorney fees and expenses.

In order to show that her attorneys' billing rates were reasonable, Willis submitted the representation contract between her and DiFalco & Associates as an exhibit to her motion. She also submitted, as an exhibit to her motion, billing records indicating that all attorney work other than 1.3 hours had been done by a third-year associate, Jennifer Lopez, and billed at $150 per hour. The records indicated that fourth-year associate John Gamlin had performed the other 1.3 hours of work, billed at $175 per hour. In order to show that the billing rates were consistent with those prevailing in Charleston, Willis submitted affidavits from Lopez and Gamlin in which they stated that these were their customary hourly rates, and that they were "average in comparison to rates charged by lawyers in complex employment cases in the Charleston, [West] Virginia area where the case was adjudicated." Willis further submitted, as an exhibit to her motion, Board decisions in three unrelated cases finding that the customary rates of Gamlin and other DiFalco attorneys were reasonable in three other localities. The government submitted no evidence regarding the reasonableness of these rates.

On March 19, 1998, the administrative judge issued an initial decision finding that Willis was entitled to prevailing-party status and an award of attorney fees and costs. However, the administrative judge held that Willis had failed to submit sufficient evidence to establish that the contract hourly rates of $150 and $175 were the "prevailing community rate" for Charleston. *Willis*, slip op. at 6–7. The administrative judge awarded her attorney fees at an hourly rate of $100, reducing the

award from the amount she requested, $15,787, to $10,471.

██ The administrative judge's initial decision became final when the full Board denied Willis' and the government's petitions for review. *Willis v. United States Postal Serv.*, 84 M.S.P.R. 529 (1999). Willis filed a timely petition for review in this court on December 21, 1999. We have jurisdiction under 28 U.S.C. § 1295(a)(9). Oral argument was heard in this case on January 11, 2001.

### ANALYSIS

### A. *The Standards of Proof and Review*

██ Under the applicable fee recovery statute, a prevailing party may be entitled to recover the attorney fees incurred during his appeal to the Board. This section provides that:

> [T]he Board, or an administrative law judge or other employee of the Board designated to hear a case, may require payment by the agency involved of *reasonable attorney fees* incurred by an employee or applicant for employment if the employee or applicant is the prevailing party and the Board, administrative law judge, or other employee (as the case may be) determines that payment by the agency is warranted in the interest of justice, including any case in which a prohibited personnel practice was engaged in by the agency or any case in which the agency's action was clearly without merit.

5 U.S.C. § 7701(g)(1) (1994) (emphasis added). Under Board decisions, in order to establish reasonableness, the applicant "must provide specific evidence of the prevailing rate for similar work." *Mitchell v. U.S. Dep't of Health and Human Servs.*, 19 M.S.P.R. 206, 210 (1984).

██ At the time of Willis' motion, moreover, the Board's regulations required that

a fee applicant submit evidence of "the prevailing community rate for similar services that will establish a market value for the attorney's services." 5 C.F.R. § 1201.203(a)(3) (1998). Although not defined in this regulation, the Board has construed "community" as the geographical area where the Board hearing is scheduled to occur. *Manley v. Dep't of the Air Force*, 67 M.S.P.R. 467, 472 (1995). Willis has urged this court to overrule *Manley* on this point, arguing that neither § 7701 nor the regulation provides support for such a construction of the word "community." We review the Board's interpretation of its own regulations with deference. While we are not bound by Board decisions such as *Manley*, we hereby adopt its holding that "community" should be interpreted as the locality where the Board hearing is scheduled, because the Board's construction has not been shown to be unreasonable or inconsistent with the regulation. Thus, under Board case law, Willis had to submit "specific evidence" that the requested billing rates were consistent with those prevailing in the community where her Board hearing was scheduled—Charleston, West Virginia. *Mitchell*, 19 M.S.P.R. at 211.[1]

 Our standard of review on appeal from a decision of the Board is largely deferential. Pursuant to 5 U.S.C. § 7703(c)(1) (1994 & Supp. IV 2000), where there has been no allegation of procedural error, we reverse the Board's decision only if we find it to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." We, of course, are not bound by Board decisions, although, as noted above, we are respectful of the Board's interpretation of its own regulations. We review the Board's interpretation of the statutory law without deference, however. Here, we reverse the Board's decision because it improperly denied recovery of fees at the requested rates by imposing an evidentiary burden on Willis based upon case law that is not applicable to this case.

**B. *Was the Evidence Submitted by Willis Prima Facie Sufficient?***

**1. *The Evidence Submitted by Willis***

 In support of her motion for attorney fees, Willis submitted the Lopez and Gamlin affidavits, her representation contract with the DiFalco firm, and the three Board decisions awarding fees for work done by DiFalco lawyers in unrelated appeals, at their customary rates. In her affidavit, Lopez asserted that her contract rate was "average in comparison to rates charged by lawyers in complex employment cases in the Charleston, [West] Virginia area." Gamlin asserted likewise in his affidavit, using substantially identical language. Contrary to the administrative judge's conclusion that Willis submitted "no relevant evidence," affidavits are themselves "evidence." We discuss below whether the assertions they contain are too conclusory.

In their affidavits, Lopez and Gamlin also state that for years they "have represented clients in *many cases* involving appeals to the Merit Systems Protection Board" (emphasis added). As an exhibit to her motion, Willis submitted three Board decisions awarding fees for work performed by Gamlin and others at the

---

1. We note that, effective April 26, 2000, the Board amended its regulation to require only that the billing rate "is consistent with the prevailing community rate for similar services in the community *in which the attorney ordinarily practices.*" 5 C.F.R. § 1201.203(a)(3) (2000) (emphasis added). As this amendment does not apply retroactively, however, to obtain reversal in this case Willis must have met her burden of submitting "specific evidence" that the contract rates were consistent with those prevailing in Charleston.

DiFalco firm in unrelated Board appeals, finding their customary rates reasonable in Denver, Minnesota, and Chicago. One was a 1995 decision holding that Gamlin's customary hourly rate of $175 was consistent with the market rate in Denver, Colorado. *See Sperling v. United States Postal Serv.*, No. DE–0351–94–0559–A–1 (Initial Decision, Oct. 2, 1995). In that case, the fee applicant had submitted the representation contract specifying that rate and affidavits from several local attorneys stating that the contract rate was consistent with the market rate in Denver. But, the government submitted affidavits from several other local attorneys stating that the contract rate was too high to be consistent with the market rate. The Board found the applicant's evidence sufficient, and awarded fees at the requested $175 hourly rate.

In a second decision, the Board held, in 1992, that Gamlin's then-customary hourly rate of $150 and the customary rate of attorney John DiFalco were consistent with the market rates in Minnesota. *See Nynas v. United States Postal Serv.*, No. CH–0752–91–0618–A–1 (Initial Decision, May 8, 1992). The fee applicant had submitted the representation contract specifying the rates sought, along with affidavits by Gamlin and DiFalco attesting, much as in this case, that the contract rates were consistent with local market rates. As in this case, the government disputed this point, but did not submit rebuttal evidence. The Board accepted the applicant's evidence as sufficient. In a third decision, in 1994, the Board held that Gamlin's contract hourly rate of $175 was consistent with the market rate in Chicago, although the government did not dispute this point. *See Parello v. United States Postal Serv.*, No. CH–0752–93–0615–A–1 (Initial Decision, Jun. 24, 1994).

## 2. *The Board Decisions relied upon by the Administrative Judge are Distinguishable*

In granting Willis recovery for the hours billed by her attorneys, but only at a reduced hourly rate of $100, the administrative judge stated:

> [Willis] has adduced *no evidence in support of these averments* [the Lopez and Gamlin affidavits], however. The appellant's *mere assertion* that the rate charged by her attorneys was the "average" or prevailing rate in the relevant community is not sufficient to support an attorney-fee application. *See, e.g., Swanson v. Defense Logistics Agency*, 35 M.S.P.R. 115, 119 (1987); *Mitchell v. Department of Health and Human Services*, 19 M.S.P.R. 206, 212 (1984).... Accordingly, *because the appellant adduced no relevant evidence* to support her attorneys' requested hourly rates of $150.00 and $175.00, I find that an hourly rate of $100.00 is the maximum reasonable rate ...

*Willis*, slip op. at 6–7 (emphasis added). It is unclear from the administrative judge's opinion what additional evidence he would have required of Willis. The Board decisions he cited, *Mitchell* and *Swanson*, provide no support for his decision because they are inapplicable. In *Mitchell*, the appellant's attorney had represented her on a contingency basis in the hope of eventually recovering fees under § 7701(g)(1). 19 M.S.P.R. at 213. The representation contract in *Mitchell* did not specify an hourly rate, and therefore, it was not indicative of the reasonableness of the rate sought in the subsequent fee request. The appellant in *Mitchell* also submitted two attorney affidavits, but the Board found that they did not address "the rate that she or an attorney of comparable skill was actually able to command in the marketplace." *Id.* Thus, the Board held that the

appellant's evidence was insufficient because it provided no basis for determining a market rate. *Id.*

In contrast, Willis' evidence included specific bases for concluding that the rates requested were consistent with market rates: first, a representation contract containing the specific rates sought; and second, evidence specifying that these contract rates were "average" in comparison to those prevailing in the community—the attorney affidavits, and the prior Board decisions finding Gamlin's and DiFalco's customary rates reasonable in several other localities.

*Swanson* is similarly inapplicable. The applicant there had "not provided the fee agreement, . . . [nor] any evidence of the hourly rate her attorney has charged clients in similar cases." 35 M.S.P.R. at 119.

Thus, the administrative judge's conclusion that Willis had failed to provide evidence required under *Mitchell* and *Swanson* was incorrect. Willis did supply such evidence. Therefore, these decisions, even assuming their correctness, cannot control the present appeal. Because we find *Mitchell* and *Swanson* inapplicable, we have no reason to address their correctness.

### 3. *An Affidavit from a Local Attorney is Not Required if There is Other Evidence of Local Rates*

█ The administrative judge's opinion observes that affidavits from Charleston attorneys practicing federal employment law with experience similar to Lopez and Gamlin *could have* established ·that the contract rates were consistent with those in Charleston. *Willis,* slip op. at 15 (citing *Manley,* 67 M.S.P.R. at 473–74). However, in *Manley* the Board clearly did not state that a fee applicant *must* submit an affidavit from a local attorney. It merely stated that the burden of submitting "spe-

cific evidence" of the prevailing rate in the relevant community "*may* be met" by such a submission. *Manley,* 67 M.S.P.R. at 473 (emphasis added). There is simply no Board case law to support the requirement for an affidavit from a local attorney in all cases. Nor is there precedent in our court. On this question of first impression then, we hold that if the fee applicant submits sufficient evidence of local rates, an affidavit from a local attorney is not required.

At oral argument before this court, the government urged that unless the non-local attorney-affiant has "first-hand knowledge" of the relevant prevailing rate in the hearing community, an affidavit from a local attorney who does have such knowledge is required. Presumably, in order to possess "first-hand knowledge," an attorney-affiant must have practiced law in that very community. As we asked of government counsel at oral argument, what if an affidavit were submitted by a non-local attorney asserting consistency of the rate sought with the prevailing rate in the hearing community based on reliable evidence, such as an article detailing such rates in that community's bar association newsletter? The government responded that because such an affidavit would not be based upon "first-hand knowledge," it would be insufficient. We have been shown no actual authority, however, to support a requirement that the statements in the attorney-affidavits of Lopez and Gamlin must be based upon "first-hand knowledge," rather than knowledge gained from otherwise reliable sources. We decline to impose such a requirement in this type of satellite litigation, *i.e.,* a collateral motion for fees submitted after the fee applicant has prevailed on the merits of the appeal, involving officers of the tribunal and members of the bar. Thus, we reject the government's argument.

#### 4. *No Applicable Precedent Requires Evidence Beyond that Submitted by Willis*

Although not cited by either party, and not mentioned in the Board's opinion, the Supreme Court has stated that a motion for attorney fees under a different but comparable fee recovery statute must be supported by "satisfactory evidence—in addition to the attorney's own affidavits." *Blum v. Stenson,* 465 U.S. 886, 895 n. 11, 104 S.Ct. at 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984). In that case, the attorneys who had represented the fee applicant, Stenson, were employed by The Legal Aid Society, and had provided representation at no charge, *pro bono publico. Id.* at 890, 104 S.Ct. at 1544. Thus, Stenson had not entered into a representation contract specifying an hourly rate. Stenson's *only* evidence that the rates sought in her motion for fees were consistent with market rates consisted of affidavits from her attorneys so attesting.

Willis' submission of the representation contract specifying the requested rates is a critical distinction between this appeal and *Blum.* A representation contract specifying hourly rates is evidence that the contract rates are consistent with local market rates, because the client freely agreed to pay the rates by entering into the contract. Further, the three Board decisions in unrelated appeals—although providing no direct evidence of market rates in Charleston, but only of rates in those three other localities—should nevertheless have confirmed to the administrative judge that, as asserted, Gamlin and the DiFalco firm have a broad national practice before the Board, are aware of market rates in various localities, and that their customary rates—which they charged Willis—have been found reasonable for several other localities. This evidence lends credence to the assertions in their affidavits that their rates were in-

deed "average," and thus reasonable, in Charleston. Therefore, assuming that *Blum* is not distinguishable and that the Court's statement quoted above is applicable, we hold that Willis met its requirement by submitting satisfactory evidence "in addition to" her attorneys' affidavits— namely, the representation contract and the prior Board decisions.

This court, also in the context of a different but comparable fee recovery statute, has recently stated that "the trial court should demand adequate proof from individuals familiar with the market of the community billing rate charged by attorneys of equivalent skill and experience performing services of similar complexity." *Raney v. Fed. Bureau of Prisons,* 222 F.3d 927, 938 (Fed.Cir.2000) (en banc). *Raney* was not cited by either party, nor was it before the Board because it issued after the full Board declined review of the administrative judge's initial decision. In *Raney,* as in *Blum,* the fee applicant had not entered into a representation contract specifying an hourly rate, and his *only* evidence that the rates sought in his motion for fees were consistent with market rates consisted of affidavits from his attorneys. *Id.* In contrast, Willis submitted evidence indicating that Lopez and Gamlin were "familiar with the market" rates in Charleston—namely, their affidavits so stating, her representation contract, and the prior Board decisions. *Id.* Thus, assuming that *Raney* is not distinguishable and that this court's statement quoted above is applicable, we hold that Willis satisfied its requirement by submitting "adequate proof from individuals familiar with the market." *Id.*

Given their national practice, the Board decisions awarding their customary rates in diverse localities, and the lack of rebuttal evidence, we see no reasonable basis upon which the Board could properly dis-

believe the affidavits of Lopez and Gamlin. It appears that the Board failed to consider the representation contract and the prior Board decisions submitted by Willis. One indication of this is that they are not mentioned in the administrative judge's opinion. To the contrary, his opinion states, surprisingly, that "appellant adduced *no relevant evidence* to support her attorneys' requested hourly rates." *Willis,* slip op. at 7 (emphasis added). This oversight was reversible error.

Indeed, the Board's refusal to find Willis' evidence sufficient, in addition to being incorrect, is difficult to understand. Perhaps the Board considered the Lopez and Gamlin affidavits inadequate because they do not specify the underlying factual bases for their assertions that the contract rates were "average" for Charleston. The issue, then, is whether they must do so in order to constitute the "specific" evidence required by the Board under *Mitchell,* even assuming that this decision is correct and applicable, or to satisfy the prescriptions of our court in *Raney,* and the Supreme Court in *Blum.* We hold that they need not do so.

 We discern no requirement either for corroborating affidavits from local attorneys or others, or that the attorneys' affidavits must set forth the underlying factual bases or sources for their assertions equating the contract and community rates. Such an attorney-affiant should be presumed to be knowledgeable and truthful unless and until he is shown to be otherwise.[2] After all, Lopez and Gamlin are members of the bar and officers of the "court"—the Board in this case. As such,

they are subject to disbarment before the Board and/or referral to the conduct committee of their state bar if it appears that they knowingly filed a false affidavit. One purpose of placing officers of the court under the threat of disbarment, suspension or censure is to assure the reliability of their assertions, even in pleadings and briefs, and all the more so in sworn affidavits.

In addition, Willis submitted evidence that her attorneys, and the DiFalco firm which sets their rates, have a national practice before the Board, and are experienced at charging clients their customary rates—the exact rates at which Willis contracted and at which she seeks recovery. We therefore deem it unnecessary, at least on the record in this case, for the Lopez and Gamlin affidavits to include factual bases in support of their assertions, even though they are non-local attorneys.

### CONCLUSION

We hold that by submitting her representation contract, the Lopez and Gamlin affidavits, and the prior Board decisions in three unrelated cases, Willis satisfied her burden of proof, prima facie, as to the reasonableness of the fees sought. The government offered no rebuttal evidence. We therefore hold that Willis is entitled to recover at the contract rates. The Board's apparent imposition of a requirement that Willis submit further evidence such as an affidavit from a local attorney, or otherwise show first-hand knowledge of the prevailing local rates is erroneous because it was based upon Board decisions that, even

---

**2.** The Lopez and Gamlin affidavits, moreover, are far different from an affidavit by an expert submitted to establish the facts upon which a claim is based, or to oppose a motion for summary judgment that must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The attorney affidavits here do not contain asser-

tions regarding issues about which the attorney cannot be presumed to have direct knowledge, such as complicated technical issues of patent infringement or the level of skill of the ordinary practitioner in a particular field of technology. Rather, they contain assertions regarding the attorneys' own customary rates.

if correct, are factually distinguishable from this case and which, in any event, do not impose such requirements. It was error to deny an award based on the contract rates merely because Willis failed to submit such further evidence.

*REVERSED AND REMANDED.*